TAX SECURITIES CORP. v. MANATEE COMPANY, *et al.*

155 So. 742.
Opinion Filed June 27, 1934.

*Edwin Brobston,* for Appellant;

*Whitaker, Whitaker & Terrell* and *H. Lane Coachman,* for Appellees.

WHITFIELD, P. J.—On October 1, 1931, Tax Securities Corporation, a corporation under the laws of . Florida, brought a bill of complaint under Chapter 14572, Acts of 1929, to foreclose the lien of tax sale certificates covering large areas of described land, which certificates were bought in and at the tax sale by the State and purchased from the State by complainant under Section 42, Chapter 14572, Acts of 1929, the said certificates representing liens for unpaid State and county taxes for the year 1925. A large number of persons and corporations alleged to be claimants of some interest in the lands but inferior to rights of complainant, were made defendants, among them The Myakka Company, a corporation of South Carolina.

It is alleged that complainant "has paid all omitted and subsequent taxes and interest thereon, including all costs and penalties, and has redeemed all subsequent tax sale certificates affecting said lands, * * *" Section 42, Chapter 14572; that complainant "purchased said certificates under the provisions of Section 42, of Chapter 14572, Laws of Florida, 1929, after due notice published by the Clerk of the Circuit Court in and for Manatee County, Florida, in a newspaper of general circulation published in said county, a copy of said notice and proof of publication being attached hereto, marked Exhibit "C," and reference thereto prayed; and after confirmation of bid made by your Orator as required by Section 42 of Chapter 14572, Laws of Florida, 1929, as will more fully appear by certificate signed by the Clerk of the Circuit Court of Manatee County, Florida, and

by the Comptroller of the State of Florida, attached hereto and marked Exhibit 'D'; * * *"

The Myakka Company filed an answer February 8, 1933, and an amendment thereto. A motion of complainant to strike portions of the amendment to the answer of the Myakka Company was denied and complainant appealed. The Myakka Company owned lands here involved in 1925, but sold them and now holds a purchase money mortgage on the lands.

Counsel for the Myakka Company state that the amendment to its answer alleged, among other things, the following:

"That the appellee (Myakka Company) was a nonresident of the State of Florida and had no intangible property in said State on January 1, 1925, or at any time subsequent thereto; that the lands involved were of little value and of no use except for grazing, being cut-over and swamp or marsh lands; that though the assessor was not familiar with the value thereof and never inspected them, nevertheless, there was levied against the lands for taxes for the years 1925 to 1930, inclusive, the exorbitant aggregate sum of $127,614.13; and that the Tax Assessor, through and by an intentional, deliberate, systematic, arbitrary and fraudulent scheme and assessment, which was acquiesced in and consented to by the County Commissioners, confiscated the mortgage lien of the appellee and the lands described therein, by a refusal to assess enormous amounts of intangible personal property consisting of moneys, notes, mortgages and other intangibles owned and held by persons residing in Manatee County, Florida, during said periods and subject to assessment therein on January 1, 1925, and on each of the years covered by the certificates sought to be enforced. The appellee (Myakka Company) then by his amended"

answer "not only set out the foregoing facts relative to the assessment of said lands, but went further and specified the names of persons holding certain mortgages and notes, the amounts thereof, the banks and the moneys on deposit, all of which the appellee claimed was subject to assessment for said years,—the aggregate amounts of which intangible personal property exceeded the total amount of the assessment rolls for said county for each of the years involved, and was sufficient to have changed the entire assessment rolls for each of said years;" "that said method of assessing for taxes the real estate on which this defendant holds a mortgage, is arbitrarily placing such unjust and exorbitant values thereon, and the omissions or failures to assess intangible property as aforesaid for each and every of said years 1925 to 1930, inclusive, inured to the great detriment of this defendant, denied it the equal protection of the law, constituted fraud against it, a deprivation of its property without due process of law, and the acts of said assessor in placing such values thereon and in failing and refusing to so assess said intangible personal property has resulted in such assessment against defendant's said mortgaged lands and the charging delinquent taxes subsequent to the year 1925 based upon such values as to entirely destroy or confiscate the value of this defendant's said mortgage as well as the value of said lands and renders invalid and void each of the assessment rolls for the years 1925 to 1930, inclusive, and such of said assessment or assessments as were purported to be made or taxes attempted to be charged against the property on which this defendant holds a mortgage."

The amendment to the answer contained many other averments which it is not necessary to state here.

Complainant seeks to enforce tax liens purchased from the State, which are first liens superior to all others. De-

fendant, Myakka Company, a purchase-money mortgage lien holder, avers a right against the complainant upon the ground that the tax assessments are illegal and therefore are not a legal predicate for the tax liens represented by the tax sale certificates held by complainant.

Ad valorem tax liens are impressed as of January 1st, each year, upon the property by the statute; the assessments ascertain the amounts of the taxes and the tax sale certificates issued for non-payment of the taxes evidence the amounts of the unpaid taxes and the statutory lien therefor on property described in the certificates.

Complainant's tax sale certificates were issued by the State for unpaid State and County taxes of 1925, which are as of January 1st, 1925, first liens on the property described in the certificates, and superior to all other liens.

The defendant avers the ownership on January 1, 1925, of lands involved in this suit, and is held to know of the provisions of the statutes which impose the lien as of January 1st of each year, which require the sale of property for non-payment of taxes, which authorize the issue, redemption and sale of tax sale certificates for unpaid taxes for each year; which authorize the foreclosure of tax sale certificates so that an indefeasible title may be conveyed to a purchaser under a foreclosure decree. Defendant also had the special privileges of redemption conferred by Chapter 14572, Acts of 1929, and other statutes, yet it is not shown that any effort was made to pay taxes imposed by law or to redeem from the tax sale certificates, or to in any way adjust the tax liens.

Defendant's lands were assessed for taxes as of January 1st, 1925, and it does not appear that any steps were taken to pay the taxes, or to contest or to adjust the amounts assessed on the lands, or to redeem the lands after they were

sold for non-payment of taxes, though statutes offered special inducements and facilities for adjustments of past-due taxes which constitute first liens on the land. In the meantime complainant purchased the tax sale certificates covering large areas of land including lands of the answering defendant. The answer of the defendant filed February 8, 1933, does not show void or illegal assessments of defendant's lands; and if such assessments are voidable, the defendant has neglected to seek administrative relief under the statutes or judicial relief during the years the taxes have been a first lien on the lands. Defendant still has the right to redeem its lands pending foreclosure decree; but it cannot now be heard to assert its challenge as made to the entire assessment rolls for several years, when it has not paid any taxes on the land, and has so long neglected to avail itself of remedies afforded by law, and others have bought tax sale certificates which it could have redeemed to its great advantage. See principles announced in Lee v. Booker & Co., Inc., 108 Fla. 534, 146 So. 546; W. Va. Hotel Corp. v. Foster Co., et al., 101 Fla. 1147, 132 So. 842; Hackney v. McKenney, 113 Fla. 176, 151 So. 524. See also De Treville v. Smalls, 98 U. S. 517, 25 Law Ed. 174; Florida Savings Bank v. Brittain, et al., 20 Fla. 507, text 514.

Among the grounds of the motion to strike the amendment to the answer are: "This defendant has been guilty of laches," and, "it does not appear by the allegations of said amendment that this defendant has ever appealed to the equalization board for remedy, as provided by law."

The motion to strike the amendment to the answer should have been granted.

Reversed.

DAVIS, C. J., and ELLIS, TERRELL and BUFORD, J. J., concur.

BROWN, J., not participating.

ELLIS, J. (specially concurring). — The conclusions reached in this case are consistent with the views heretofore expressed by this Court as to the validity of Chapter 14572, Laws of Florida, 1929, and the Legislative policy expressed in such legislation. My views which are contrary to the Court's as expressed in other cases involving this statute have heretofore been expressed and were not adopted. So authority exists for the conclusion reached in this case and is found in the cases cited and other cases in which the validity of the Act was upheld. Upon the authority of such other decisions I concur in the conclusions reached.