MRS. S. J. STUBBS, a widow, v. FLORIDA STATE FINANCE CO.

159 So. 527.
Opinion Filed February 21, 1935.

*John F. Burket,* and *N. G. & John Fite Robertson,* for Appellant;

*Treadwell & Treadwell,* for Appellee.

BROWN, J.—This is an appeal from an order denying a motion to dismiss a bill of complaint. The bill was brought in the Circuit Court of Sarasota County by the former owner of certain lands against the appellant for the purpose of cancelling the tax deed conveying said lands. It appears that the tax sale certificates held by the State covering these lands, was sold by the Clerk of the Circuit Court under the provision of Section 42 of Chapter 14572 of the Laws of 1929. At the same time a number of other certificates were sold by the Clerk to same twenty-five different persons, all, including the one here in question, for 5% of the face of the certificates and subsequent taxes. This sale was held in November, 1932. It also appears that the Board of County Commissioners passed a resolution recommending to the Clerk and the State Comptroller the acceptance of the various and ·sundry bids made by the twenty-six different persons, of which the bid made by "Sam C. Patterson, by J. F. Miller," was one, the latter bid covering the land in question.

The bill seeks the concellation of the tax deed mainly upon the ground that J. F. Miller, a member of the Board of County Commissioners had submitted a written bid for the tax certificates in question here, signed "Sam C. Patterson, by J. F. Miller," and that inasmuch as said Miller was a member of the Board of County Commissioners and had voted for the resolution recommending to the Clerk and the Comptroller the acceptance of the various and sundry bids above referred to, he was acting officially upon a matter in

which he was personally interested, and that the effect of this was to render illegal the sale of the said tax certificates to Patterson, which it appears were afterwards transferred to the appellant, who later secured the tax deed thereon, which is here sought to be cancelled. It is also alleged that the subsequent assignee of the tax certificates, the appellant here, was closely related to said J. F. Miller. The bill does not allege any actual fraud on the part of Miller; what it alleges is that his action amounted to a legal fraud.

It is not necessary for us to deny in any particular the contention of appellee that a public official cannot legally participate in his official capacity in the decision of a question in which he is personally and adversely interested, or as to which he is acting as the agent for another, whose interest is opposed to that of the governmental unit which the official represents, thus causing him to occupy a position where his duty as a public official is in conflict with his personal interest. This principle has many times been recognized by this court and is not only founded upon a wholesome public policy, but is undergirded by the familiar scriptural quotation attributed to One "who spoke as never man spake," to the effect that "no man can serve two masters." Lainhart v. Burr, 49 Fla. 315, 38 So. 711; State v. Gautier, 108 Fla. 390, 147 So. 240.

But under the statute, no official duty whatever was imposed upon the County Commissioners, of which Miller was a member, in regard to the acceptance of these bids. We have often held that the powers of County Commissioners are purely statutory. A mere reading of Section 42 of said Chapter 14572 shows that the Board of County Commissioners are not invested with any power in regard to the rejection or approval of bids, or anything connected with the sale of tax certificates held by the State, nor is any duty

of this kind imposed upon them by the statute. The power and discretion to reject and approve all bids is, by the statute, expressly vested in the Comptroller. If, as has been intimated in the Briefs, the Comptroller made it a practice to secure the benefit of the advice or judgment of the Board of County Commissioners in regard to the reasonableness of such bids and whether they should be accepted or rejected, for his convenience and information in exercising his official duty with reference to the rejection or approval of bids, such course of action by the Comptroller could not invest the Board of County Commissioners with a power which had been expressly confided to the Comptroller; nor could the voluntary action of the board have had any such effect. The mere fact that the Commissioners adopted a formal resolution on the subject, would not affect the question.

We do not think, therefore, that there is a sufficient showing here to authorize this court to hold that the tax deed here attacked should be canceled upon the ground hereinabove discussed.

Another ground for the cancellation of the deed, which is mentioned in the bill, is the fact that the deed recites a consideration considerably larger in amount than that which was paid for the certificates. Apparently, the deed recited as its consideration the total amount of the taxes for which the lands were sold instead of the amount which was paid to the state when the certificates were sold. This discrepancy might give a ground under some circumstances for a bill to reform the tax deed so as to express the actual consideration. This is a point, however, which we are not called upon here to decide. Certainly this error in reciting the amount of the consideration, whether it was inadvert-

ently or purposely made, does not afford sufficient ground for the cancellation and annullment of the tax deed.

Our conclusion is that the court below erred in denying the appellant's motion to dismiss the bill and that the appeal from this order must be sustained.

Reversed.

ELLIS, TERRELL, BUFORD, and DAVIS, J. J., concur.